51 CCPA

**Application of Augustus A. STRAUB.**
**Patent Appeal No. 7055.**

United States Court of Customs
and Patent Appeals.
March 19, 1964.

Worley, Chief Judge, dissented.

---

B. D. Watts, Watts & Fisher, Cleveland, Ohio, J. P. Wetherill, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (L. F. Parker, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellant appeals from the decision of the Board of Appeals affirming the examiner's rejection of claims 13 and 14 of his patent application for Convector Space Trays, Serial No. 374,924, filed August 18, 1953. The appealed claims read as follows:

"13. A fabricated convector space tray comprising a metal ring, a set of metal ribs attached to said ring and defining passages for gas flow therebetween, and *lifting means comprising a metal annulus disposed within said ring, secured to said tray*, and *adapted to be engaged by lifting mechanism* extending therethrough and to lift said tray and a load thereon.

"14. The combination of elements set forth in claim 13 in which the *annulus is attached to the inner ends of said ribs.*"

We have emphasized the particular portions of the appealed claims which appellant asserts cover structural features of his improved convector space tray which are not shown in the following prior art upon which the rejection is based.

| Watrous | 2,043,456 | June | 9, 1936 |
|---|---|---|---|
| Dailey | 2,489,012 | Nov. | 22, 1949 |
| Cone | 2,580,283 | Dec. | 25, 1951 |
| Winder | 2,671,656 | Mar. | 9, 1954 |

The space tray of these claims is seen to be a combination of three basic elements, namely, a metal ring, a set of metal ribs, and an annulus "disposed within" the ring. The claims thus describe the position and arrangement of the three basic elements in specifying that the ribs are attached to the ring and that the metal annulus is disposed within the ring and is secured to the tray and is adapted to be engaged by a lifting mechanism extending through it for lifting the tray and a coil of strip steel placed thereon.

As pointed out in the board's opinion:

"The instant case points out certain difficulties of handling and then points out the particular disclosed novelty over the prior art that is intended to solve the handling problem. The particular novel feature urged is an annulus located within the ring and capable of being engaged by a handling equipment.

"The instant application does not show the general combination with the furnace nor does it show any form of handling apparatus. In the case as filed (see starting with line 24, page 2 of the specification) it was stated that the handling equipment was disclosed in a copending application of appellant. By amendment it is now stated that the handling equipment is disclosed in a patent to:

Heppenstall 2,701,736 Feb. 8, 1955 granted on an application filed

subsequent to the filing date of the instant application. This patent discloses trays of the same general type as in the instant case, i. e. in the form of annuli, each having a flange protruding into the axial opening and so related to the work supported and a handling mandrel as to be engageable by retractable dogs carried by the mandrel. The flanges must be so spacially related to the annular load carried thereby and from each other as to permit the retractable dogs to be inserted under the carrying flange in accordance with the disclosure of this subsequently filed application, which constitutes the only disclosure of how to use the instantly claimed tray."

Convector space trays shown in the references are flat annular rings which are positioned horizontally between the adjacent ends of coils of strip steel arranged on end in vertical stacks in an annealing furnace. If the coils were stacked directly on each other without the use of the convector space trays, the hot gases which flowed in the furnace would be in contact only with the inner and outer turns of the coils. Appellant asserts that in such case the heat transfer from the inner or outer turns of a coil to intermediate turns is uncertain and non-uniform due to the insulating effects of air spaces between the turns. However, when space trays are placed horizontally between the ends of coils in a stack, heat transmitted to the edges of the turns of a coil flows through the metal and will heat the entire coil.

Such trays as shown by the prior art were constructed so as to permit the heated gases not only to flow vertically through the central aperture of the coils but also to flow horizontally between the ends of adjacent coils and thus to heat the edges of the coil turns for their full lengths. These space trays consisted of two flat rings with central openings therethrough and with ribs between the rings and extending from their inner periphery to their outer periphery as

illustrated in the Dailey and Winder reference patents; or they consisted of one such ring with sets of such ribs on opposite sides of the ring as shown in the Winder reference patent. The central opening through such rings permitted gases to flow vertically through the coils and trays while the spaces between the ribs permitted gases to flow horizontally betwen the central opening and the space around the coils.

Appellant's brief points out that such space trays are of substantial size, usually about 2 inches in axial height, from about 4 to 6 feet in outside diameter, and having central openings from about 1 to 2 feet in diameter. They are said to weigh from about 500 to 750 pounds. Appellant asserts that such trays are used with coils of strip steel ranging from about 3 to about 6 or 7 feet in strip width. Such a coil of about 66 inches in outside diameter and 3½ to 4 feet in strip width is asserted to weigh about 60,000 pounds.

In use, a plurality of vertical stacks, each consisting of alternately arranged coils and trays, are built up on the core stand of an annealing furnace and then a hood is lowered over the stacks with its edges resting in a groove in the base of the furnace and with sealing material, such as sand, in the groove to retard or prevent the escape of gases from within the furnace. Non-oxidizing gases are discharged into the space within the hood and usually are heated by tubes within the hood through which highly heated gases are passed. The direction of travel of the non-oxidizing gases may be as shown in the Dailey reference patent, that is, vertically up through the central openings in the trays and coils, horizontally through the trays, vertically down outside of the coils and out through the sand seal or pipes. The Winder reference shows a similar gas flow pattern. An alternative direction of gas flow is shown in the Cone reference where the hot gases enter the hood through the coil stand, are drawn from outside the coils horizontally through the trays and

are exhausted from the center of the stack through the base or the sand seal.

After the coils have been heated for the desired length of time, the heating of the gases is discontinued and the coils are allowed to cool down to a predetermined temperature, after which the hood is removed and the stacks are disassembled by alternately removing the trays and coils.

Appellant's brief states:

"In building up and tearing down these stacks of coils and space trays, the prior space trays were handled as follows. A crane or some similar apparatus with depending chains, cables or the like, having hooks at their ends was employed. This apparatus was moved to a tray storage and a workman manually engaged the hooks with the outer edges of a tray. The apparatus lifted the tray, moved it to a position over a coil previously placed on end on the coil stand of the furnace, and lowered the tray onto the coil. Another workman disengaged the hooks from the tray manually. After another coil was placed on end on the top of that tray, another tray was brought from storage and placed on the second coil in the manner just described. These operations were continued until each stack was built up to the maximum height which would be accommodated within the hood, usually to about 13 to 15 feet, and as many of the stacks were made as the hood would accommodate, often as many as eight.

"When the furnace was opened after completion of the above described annealing operation, the stacks were torn down by reversal of the foregoing operations. That is, a workman manually engaged the hooks of the transfer apparatus with the outer edges of the top space tray and that apparatus lifted the tray, and carried it to, and deposited it in, the tray storage place, where another workman manually

disengaged the hooks from the tray. After the thus exposed coil of steel had been removed, the next lower tray was removed in a similar fashion. These operations were continued until all the stacks were completely disassembled."

It is appellant's position that a considerable amount of manual labor and time was required to handle the space trays, as can be seen from the foregoing description. The trays prior to the present invention were such that but one tray could be handled at a time. As an example, appellant asserts that when a furnace accommodated eight stacks of four coils each, thirty-two trips of the handling apparatus between the storage space and the furnace were required for bringing the trays for the eight stacks to the furnace and the same number of trips were required to take those same trays back to storage. The time for these operations is non-productive time of the furnace and the time so spent represented an unrecoverable item of cost of the annealing operation.

Appellant asserts that despite the fact that these costs for labor and furnace down-time were well known, they had long been endured because no one had been able to find a way of avoiding them.

The issue presented by the present appeal arises from the board's affirmance of the examiner's rejection of claims 13 and 14 "as directly readable on each of Cone and Dailey with further reference to Watrous and Winder." In its opinion, after considering the language of claims 13 and 14 in the light of appellant's disclosure, the board's position is stated as follows:

"Turning now to Dailey, it is our opinion, consonant with the opinion of the Examiner, that each of these claims reads directly on the convector tray there disclosed. This tray is formed of two spaced plates having ribs therebetween. Each of these plates has a unitary portion in the form of a unitary metallic annulus disposed within the ring in

exactly the same sense that appellant's device has this feature.

"The claim is entirely silent on the disclosed fact that when there are two spaced plates, as in Dailey, one annulus on the interior edge of one plate has a diameter less than that of the adjacent plate. The claims are entirely silent on the geometry of the tray, *per se*, which would permit of use of the Heppenstall lifting device. For lifting the lowermost tray which rests upon a coil to be heat treated, it is essential that the lowermost annulus of a stack of trays have an internal diameter less than the internal diameter of the coil or otherwise be so spacially related as to permit the dogs to be projected into lifting engagement therewith. The claims are entirely silent as to such essential features.

"This is pointed out to emphasize the breadth of the claims before us and the entire lack of limitation as to features essential to the only disclosed utility which requires for understanding not only a study of the instant case but a study of the disclosure of the subsequently filed application of Heppenstall that has become the cited Heppenstall patent.

"The application of the claims to the second basic reference is obvious from what has been stated."

The issue presented by this appeal appears to be one of semantics more than one of substance. The appealed claims each call for "a metal annulus" which is disposed within the ring and is "secured to the tray." The drawing of the application consists of ten figures. In the construction shown in Figures 1–8, the "metal annulus" is a separate member which in the specification is referred to as a "ring." Thus in referring to the construction shown in Figure 2, the specification states:

" * * * By virtue of the welded attachment of ring 10 to the tray and by virtue of the fact that this ring is designed to support loads far in excess of the weight of the tray itself, the tray and coils and trays stacked on it may be lifted and carried safely by lifting tongs in the manner described in my aforesaid copending application."

In referring to the construction shown in Fig. 3 the specification states:

" * * * A metal ring 25 of outside diameter corresponding to the diameter of central transverse opening 26 defined by the inner ends of ribs 21 is welded to said rib ends to provide a strong and rugged construction for use with the lifting apparatus of my aforesaid copending application."

This reference to a "metal ring" also is used in describing the construction shown in Figures 5 and 7. However, when the construction of Figure 9 is described, we find the specification referring to "an inwardly projecting annular flange 53 which is integral with the top plate."

Thus, construing the language of the appealed claims in the light of the specification, we are required to give to the term "a metal annulus" a meaning broad enough to include both the "metal ring" and the "annular flange" which are shown in the drawing and described in the specification.

While we respect and follow the factual analysis made by the board and by the examiner, we do not agree with their legal analysis of the claims on appeal. These claims are specific, narrow claims which require the presence of "lifting means comprising a metal annulus disposed within" the ring which forms the body of the convector space tray. Each claim specifically requires the presence of this metal annulus as an element of the lifting means. For such claims to be "directly readable on" the references as found by the examiner and the board, it is necessary to find this feature in the references. It is to be noted that both the examiner and the board seem to have ignored this very specific language of

the claims, even though they purport to have found the feature in the prior art references in which there are central annular openings of the rings forming the bodies of the trays. These openings may extend inwardly from the inner confines of the coils to be heated. We think the proper reading of the appealed claims requires as a separate element "a metal annulus disposed within the ring" which forms the body of the tray. Neither the examiner nor the board has pointed to such an element in the references. Unless such an element is present in the references we are unable to agree that the appealed claims are "directly readable" on the prior art constructions.

The "lifting means" defined in the claims as a "metal annulus" appears to be of significant commercial importance, as pointed out in the Straub affidavit of October 29, 1958:

> "The volume of sales by my company of space trays embodying the present invention has increased from year to year during the past five years except as affected by the recession, and in the first of those five years it was greatly in excess of the largest prior annual sales by my company of space trays not embodying the present invention."

We refer to this affidavit particularly since it is directed to the invention claimed in the subject application and indicates the public acceptance of such trays. This commercial acceptance suggests that the instant tray had some feature or features which earlier trays did not possess. There is nothing of record from which we can refute appellant's position as stated in his brief that:

> "The Dailey, Cone and Winder patents merely present the longstanding problem in tray handling. Their space trays were always handled by the slow, expensive and inefficient method described above. None of those patents even suggested that the trays might be handled in a more facile, economical or effi-

cient way. Moreover, there was no device in existence which could have been used for handling the trays of those patents in such a way."

There appears to have been, therefore, a continuing problem in this art and on the present record appellant seems to have been the first to conceive that the problem could be solved if the trays could be so constructed that they could be automatically and mechanically picked up, transported, and deposited where desired; and, particularly, if a plurality of trays could be picked up and deposited one at a time or all at one time. He constructed such a tray by disposing within the metal ring of a conventional tray an annulus which was not long enough radially to affect materially the gas flow through the coils or the heat transfer efficiency, but which was long enough radially to afford adequate surface for lifting contact of the dogs of a lifting device.

The error here is that the examiner and the board applied the term "annulus" to that portion of the Cone and Dailey trays which immediately surrounds the inner opening in the trays. But these areas of the Cone and Dailey trays were never intended to serve the same function (nor indeed, *any* particular function) as the "annulus" claimed by appellant and it has not been shown that they could in fact function in that manner, i. e., as lifting means. Although it could be said that these areas are annuli, or at least portions of annuli, they are clearly not annuli "adapted to be engaged by lifting mechanism" as called for in the appealed claims. On the other hand, that embodiment of appellant's invention which most nearly approximates the prior art devices and which is described in the specification as having "an inwardly projecting annular flange 53 which is integral with the top plate," clearly includes, as a distinct element, "lifting means comprising a metal annulus * * * adapted to be engaged by lifting mechanism."

Here, as in Bolyard v. Watson, 181 F.Supp. 882, 886 (D.D.C.1959),

" * * * The error of the Board resides in its method of rationalization. Instead of looking at the reference to see what it teaches and then turning to the problem of whether in view of that teaching the applicant's claimed invention is disclosed or would have been obvious, it proceeds from a complete knowledge of applicant's invention and then creates out of the Beck disclosure by interpretation a mere verbal correspondence with claim 7. * * * "

For the foregoing reasons, the decision of the board is reversed.

Reversed.

WORLEY, Chief Judge (dissenting).

It sems to me that the majority is making fish out of the application structure and fowl out of the same structure in the reference. Thus the majority finds that the term "metal annulus" in the claims has a meaning broad enough to include the construction of appellant's Fig. 9 with "an inwardly projecting annular flange 53 which is integral with the top plate" and yet concludes that the *same term does not apply to Dailey,* which obviously also has an inwardly projecting flange integral with the top plate, merely because the claims require the annulus to be a separate element.

The Patent Office being charged with determining whether application claims define over the prior art, I cannot agree with the majority that the issue of whether the present claims so define is "one of semantics more than one of substance." Neither do I think that the reference to the "metal annulus" in terms of a lifting function which may be performed on it changes the broad application claims, which lack any structural distinction over the prior art, into "specific, narrow claims" which are patentable over that art.

Finding no error in the board's decision, I would affirm.